IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**FRANK DREWS,**

    **Plaintiff,**

vs.

    Civil Action 2:16-cv-191
    Judge James L. Graham
    Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

### REPORT AND RECOMMENDATION

Plaintiff, Frank Drews, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for social security disability insurance benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 15), Plaintiff's Reply (ECF No. 16), and the administrative record (ECF No. 9). For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## I. BACKGROUND

Plaintiff filed his applications for benefits on March 22, 2010, alleging that he has been disabled since December 31, 2010,[1] due to myocardial infarction, diabetes, sleep apnea, improper curvature of the spine, decalcification in vertebrae in his neck, collapsed artery, high blood pressure, high cholesterol, hand numbness. (R. at 356.) Following initial administrative denials of Plaintiff's applications, a hearing was held before Administrative Law Judge Elia M. Larocca ("ALJ Larocca"), (R. at 78-113), who determined that Plaintiff was not disabled. (R. at 128-37.) The Appeals Council granted Plaintiff's request for review and vacated ALJ Larocca's decision and remanded the matter to a new Administrative Law Judge, Thomas L. Wang ("ALJ Wang"). (R. at 146-48.)

Pursuant to the Appeals Council's order, ALJ Wang held a hearing on May 23, 2014, at which Plaintiff, represented by counsel, testified. When asked why he could not work, Plaintiff testified that he could not stand in one place or walk around for very long without his legs going numb from his hip to his knee cap. (R. at 52.) He added that he also could not sit for a prolonged period of time without his legs going numb from the knees down. Plaintiff stated that when that happens, he has trouble balancing after he stands up because his "feet feel like [he is] walking on pillows." (*Id.*) He later explained that this happens because of "the diabetic neuropathy in [his] legs." (R. at 57.) Plaintiff testified that his primary care physician is concerned about his balance and has scheduled a "gait test." (R. at 57, 62.) ALJ Wang observed that Plaintiff had stood up a few times during the hearing, which prompted him to ask Plaintiff

---

[1] At the May 23, 2014 administrative hearing, Plaintiff amended his onset date of disability to January 1, 2011. (R. at 43, 502.)

2

how long he could stand at one time. (R. at 59-60.) Plaintiff estimated that he could stand for "[a]bout 10 minutes or so" with no support before his leg "starts to go to sleep from the knee to the hip" such that he cannot support his weight due to the numbness. (R. at 60.) Plaintiff further estimated that he would need a half-hour break before standing up for another 10 minutes. Plaintiff similarly estimated that he could walk for 7-10 minutes before he needed a 15-20 minute break.

Plaintiff further testified that after the prior hearing, he underwent two fusion surgeries, one on his neck and one on his back. Plaintiff stated that as a result of the neck surgery, he could no longer bend or turn his head as far because he has fewer joints in his neck. He indicated that lifting aggravates both his neck fusion and back fusion and that he experiences "sharp pain" through his lower back when he bends over to pick something up. (R. at 58.) Plaintiff estimated he could lift "[p]robably about 2 or 3 pounds" approximately two hours out of an 8-hour day. (R. at 59.)

Vocational Expert Carl W. Hartung ("VE") also testified at the administrative hearing. (R. at 35-76.) The VE testified that Plaintiff's past jobs include a fast food worker, a light unskilled job; and a tax preparer, a semi-skilled, sedentary job. (R. at 68.) He concluded that a hypothetical individual with Plaintiff's age, education, and work experience and the residual functional capacity ("RFC") ALJ Wang ultimately assessed could perform Plaintiff's past relevant work as a fast food worker and tax preparer. (R. at 69.)

On June 25, 2014, ALJ Wang issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 12-25.) ALJ Wang noted that Plaintiff meets the insured status requirements through June 30, 2015. At step one of the sequential

evaluation process,[2] ALJ Wang stated that Plaintiff had not engaged in substantially gainful activity since January 1, 2011, the alleged onset date. (R. at 14.) ALJ Wang found that Plaintiff had the severe impairments of coronary artery disease; hypertension; dysthymic disorder; generalized anxiety disorder; status post bilateral carpal tunnel release; diabetic neuropathy; diabetes mellitus; stenosis due to disc herniations at the C4-C5, C5-C6 and C6-C7, which distorted the shape of the cervical cord and provided foraminal stenosis; severe degenerative changes at the L3-L4 and the L5-S1, with right greater than left foraminal stenosis at the L3-L4 and left greater than right foraminal stenosis at the L5-S1 and mild bilateral foraminal stenosis at the L4-L5; status post C4 to C7 anterior cervical discectomy with fixation and fusion; status post an L3-S1 laminectomy, facetectomy, foraminotomy, fixation, and fusion; and a posterior lumbar interbody fusion. (R. at 14-15.) ALJ Wang further found that Plaintiff did not have an

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16.)

At step four of the sequential process, the ALJ Wang set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned find[s] that [Plaintiff] has following residual functional capacity: light work as defined by regulations; never climbing ladders, ropes or scaffolds; occasional to climbing stairs and ramps; occasional to stooping; frequent to crouching; occasional for crawling; never using foot control operations; handling and fingering limited to the frequent level; avoiding concentrated exposure to extreme cold, extreme heat, wetness and humidity; goal based production, not pace work; work in a low stress job defined as only changes in the work setting.

(R. at 19-20.)

With regard to his assessment of Plaintiff's physical limitations, ALJ Wang stated as follows:

> In determining [Plaintiff's] physical limitations, I have considered the state agency opinions at Exhibits 20F, 10F, and 17F. I have limited [Plaintiff] to the light exertional level based on the combination of his severe physical impairments, however, I find that postural limitations are warranted however, I have limited [Plaintiff] more restrictively in that I find that he would be limited to occasional crawling, never using foot control operations and he is to avoid concentrated exposure to extreme cold, extreme heat, wetness, and humidity—all of these limitations are due to the combination of [Plaintiff's] severe physical impairments. Additionally, [Plaintiff's] condition of status post carpal tunnel releases support a limitation such that handling and fingering limited to the frequent level.

(R. at 23.) ALJ Wang also noted that in March 2011, Dr. Gibson had released Plaintiff to resume his regular activities following carpal tunnel surgery. Finally, ALJ Wang indicated that he rejected the opinions of Drs. Papadopal and Smilo as unsupported by the record. (R. at 23-24.)

5

Relying on the VE's testimony, ALJ Wang concluded that Plaintiff is able to perform his past relevant work.  (R. at 24.)  He therefore concluded that Plaintiff was not disabled under the Social Security Act.  (R. at 24-25.)

On January 13, 2016, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1-4.)  Plaintiff then timely commenced the instant action.

In his Statement of Errors (ECF No. 10), Plaintiff first argues that ALJ Wang erred in his consideration of the opinions of Drs. Papadopal and Smilo.  More specifically, Plaintiff maintains that ALJ Wang applied the incorrect legal standards and further failed to provide good reasons for rejecting their opinions.  Plaintiff next argues that ALJ Wang's consideration of his treating source opinions violated Social Security Ruling 96-6p.  Plaintiff alternatively submits that ALJ Wang's decision must be reversed because his RFC determination is not supported by substantial evidence.

In her Memorandum in Opposition, the Commissioner maintains that ALJ Wang properly considered and weighed the opinions of Drs. Papadopal and Smilo.  The Commissioner submits that ALJ Wang properly relied upon the opinions of the state-agency physicians because he considered the record in its entirety, including the evidence that post-dated their review.  The Commissioner further posits that substantial evidence supports the RFC ALJ Wang assessed.

## II.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

6

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### III. ANALYSIS

The Undersigned concludes that ALJ Wang erred in his consideration and rejection of the opinions of Plaintiff's treating physicians, Drs. Popadopol and Smilo.[3]

Treating specialist Dr. Smilo opined that Plaintiff was unable to safely perform his job duties due to the symptoms of his diabetic neuropathy in February 2012. (R. at 806.) At that time, Dr. Smilo noted that the diabetic neuropathy causes pain and loss of balance. He added that he had ordered further tests to determine the extent of Plaintiff's neuropathy. (*Id*.) In a "Diabetes Mellitus Residual Functional Capacity Questionanaire," primary care physician Dr. Papadopol similarly opined that Plaintiff's diabetes mellitus impacted his ability to walk and also caused extremity pain and numbness. (R. at 658.) Dr. Papadopol opined that Plaintiff needed to walk 10 times each eight hour workday, for 10 minutes each time, and that he would need to take unscheduled breaks during an eight hour work day. (R. at 659.) Dr. Papadopol further opined that Plaintiff could sit or stand each for 20 minutes at one time before needing to change position. (*Id.*) He also found that with prolonged sitting, Plaintiff would need to elevate his legs. Dr. Papadopol concluded that Plaintiff could lift and carry 10 pounds on an occasional basis and could lift less than 10 pounds frequently, but could never lift and carry 20 pounds. (R. at 661.) In April 2013, Dr. Smilo examined Plaintiff and completed a basic medical form for the local department of job and family services in which he identified Plaintiff's conditions as diabetic neuropathy, neuropathy with muscle loss, and restless leg syndrome. (R. at 833-34.) In his examination notes preceding the completed form, Dr. Smilo notes that the EMG testing

---

[3]This finding obviates the need for in-depth analysis of Plaintiff's remaining assignments of error. Thus, the undersigned need not, and does not, resolve the alternative bases Plaintiff asserts support reversal and remand.

Plaintiff underwent showed nerve weakness. (R. at 832.) On the form, Dr. Smilo again noted that the EMG Plaintiff underwent was positive for "neuropathy and muscle weakness/loss." (R. at 834.) Citing his examinations and the tests Plaintiff underwent, Dr. Smilo opined that Plaintiff could stand and walk a total of two hours in an eight hour day and sit for a total of four hours in the same time period, but only one hour without interruption. (R. at 835.) He further concluded that Plaintiff was limited to frequently lifting/carrying 6-10 pounds and was extremely limited in performing repetitive foot movements. (*Id.*)

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id*. Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 Fed. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

10

There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision.  *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity.  20 C.F.R. § 404.1527(d).  Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance.  20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

In the instant case, the ALJ considered the opinions of Plaintiff's treating physicians, Drs. Papadopal and Smilo, but rejected them, reasoning as follows:

> On March 10, 2011, Dr. Narcis Papadopol, M.D., opined in part due to [Plaintiff's] diabetes mellitis, that [Plaintiff] needed to walk 10 times each eight hour workday, 10 minutes each time and needed to take unscheduled breaks during an eight hour work day as well as with prolonged sitting, elevate his legs. On February 13, 2012, in a prescription for physical therapy, John M. Smilo, DPM, opined that due to diabetic neuropathy, that [Plaintiff] was unable to safely work job duties. On April 10, 2013, Dr. Smilo opined in part that [Plaintiff] could stand and/or walk, during an eight hour workday, two hours and would be extremely limited in repetitive foot movements. . . . I reject all of these opinions. First there is no support for finding that [Plaintiff] would need to take unscheduled breaks for any reason, or any of the other limitations set forth by this provider, and no provider other than Dr. Papadopol [h]as limited [Plaintiff] as restrictively.  Dr. Smilo's report on limitations arising from [Plaintiff's] diabetic neuropathy or any other impairment is simply not supported by the evidence, not in the least considering Plaintiff's reports of driving without incident.  Moreover, Dr. Smilo cites no specific information that he used in coming to his conclusion, only noting in support, "exam, tests."

(R. at 23 (internal citations to the record omitted).)

11

As a threshold matter, ALJ's Wang's assertion that the opinions of Drs. Papadopol and Smilo are unsupported by treatment records or other evidence in the record constitutes a good reason for discounting or even rejecting their opinions. *See* 20 C.F.R. § 404.1527(c)(2) and (3). (identifying "supportability" and "consistency" with the record as a whole as a relevant consideration). The Undersigned nevertheless concludes reversal is warranted because substantial evidence does not support the reasons ALJ Wang offered for rejecting the opinions.

First, contrary to ALJ Wang's assertion, the record contains evidence supporting the limitations treating physicians Drs. Papadopol and Smilo opined, especially with regard to limitations attributable to Plaintiff's diabetic neuropathy. At the May 2014 hearing, Plaintiff consistently testified that he believed he could not work due to his diabetic neuropathy because he could not stand or walk for very long without his legs going numb from his hip to his knee cap and could not sit for very long before his legs went numb from the knees down. (R. at 52.) Plaintiff went on to explain that when this happens, he has trouble balancing. Consistently, ALJ Wang noted his observation that Plaintiff stood up a few times during the hearing. Treating neurosurgeon Dr. Ogden, who performed Plaintiff's back and neck fusion surgeries, repeatedly noted Plaintiff's reports of intermittent numbness in his legs. (*See, e.g.*, R. at 895, 897, 899, 901, 903.) In August 2013, Dr. Ogden noted that physical examination revealed that Plaintiff had "decreased reflexes at the knees and ankles." (R. at 899.) During Plaintiff's second postoperative follow-up appointment following his lumbar fusion, Dr. Ogden noted that although Plaintiff was pleased with the results of his back surgery, he continued to have foot numbness. Dr. Ogden attributed this to his "diabetic peripheral neuropathy." (R. at 903.) The March 2012 EMG Plaintiff underwent revealed objective evidence supporting the diagnosis of diabetic

12

neuropathy. (R. at 830 (showing results of nerve conduction electromyographic examination in performed on Plaintiff's lower extremities); R. at 832 (noting EMG testing showed nerve weakness).)

Second, ALJ Wang's more specific attacks on Dr. Smilo's opinion lack merit. For example, ALJ Wang asserts that Dr. Smilo's opined limitations are unsupported because Plaintiff reported "driving without incident." (R. at 23.) In support of this statement, ALJ references a questionnaire Plaintiff completed in which he answered "[y]es" to the question, "Are you able to drive a car?" (R. at 493.) The questionnaire did not, however, ask how long Plaintiff could drive before needing a break. At the hearing, Plaintiff testified that he would visit someone who lived "about three houses down the street," but no longer visited other friends who lived "in another town a little ways" because he would have to drive to get there. (R. at 48-49.) Thus, contrary to ALJ Wang's assertion, Plaintiff's answer to this question does not in any way undermine Dr. Smilo's opinion that due to his diabetic neuropathy, Plaintiff could only stand, walk, or sit for up to one hour without interruption. (*See* R. at 843-45.) ALJ Wang's assertion that Dr. Smilo "cites no specific information that he used in coming to his conclusion, only noting in support, 'exam, tests'" likewise lacks merit. As discussed above, Dr. Smilo identified Plaintiff's diagnoses and indicated that the EMG testing Plaintiff underwent showed nerve weakness, neuropathy, and muscle weakness/loss. (R. at 832-834.) Dr. Smilo also noted that Plaintiff suffered from "atrophy of muscles" and "numbness." (R. at 844.) In sum, in rendering his opinion, Dr. Smilo relied upon his physical examination findings, the objective testing results from the EMG, and Plaintiff's diagnoses and symptoms he experienced attributable to these diagnoses. It is unclear what additional tests or evidence ALJ Wang maintains Dr. Smilo should

13

have relied upon to assess the severity of Plaintiff's neuropathy and its accompanying limitations.

Finally, ALJ Wang's assertion that no other providers beyond treating physicians Drs. Papadopol and Smilo limited Plaintiff as restrictively does not suffice as a good reason to reject their opinions under the circumstances presented in this case. The only other opinions in the record relating to Plaintiff's physical limitations come from the state-agency reviewing physicians, with the most recent of the opinions issued in November 2010, *prior* to Plaintiff's January 2011 alleged disability onset date. (*See* R. at 702-09 (rendering a physical RFC assessment in June 2007); R. at 724-731 (rendering a physical RFC assessment in June 2010); R. at 642 (affirming June 2010 RFC assessment upon reconsideration in November 2010). The most recent state-agency opinions essentially limit Plaintiff to light work. (*Compare* R. at 724-731 (June 2010 physical RFC assessment) *with* 20 C.F.R. §§ 404.1567(b) (regulatory definition of "light work").) Significantly, however, in reaching their physical RFC assessment, the state-agency physicians conclude that "[t]here is no evidence of a severe spinal impairment." (R. at 726.) Moreover, the opinions do not mention or consider Plaintiff's diabetic neuropathy diagnosis. As discussed earlier, record evidence generated subsequent to these opinions reflects that Plaintiff has several severe spinal impairments that resulted in Plaintiff undergoing back and neck fusion surgeries. In addition, Plaintiff was diagnosed with diabetic neuropathy subsequent to the state-agency opinions. The limitations Drs. Papadopol and Smilo assessed were attributable to Plaintiff's severe spinal impairments and diabetic neuropathy. Thus, the fact that the outdated state-agency opinions failed to corroborate the physical RFC limitations Drs. Papadopal and Smilo assessed, when the state-agency reviewing physicians did not even

consider Plaintiff's severe spinal impairments and diabetic neuropathy, does not serve as a reasonable basis for rejecting the opinions of these treating physicians.

ALJ Wang's failure to offer good reasons for rejecting the opinions of Drs. Papadopal and Smilo is not harmless error.  The *Wilson* Court considered three possible scenarios that could lead the Court to a finding of harmless error.  378 F.3d at 547.  First, the Court indicated that harmless error might occur "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it . . . ." *Id.*  Second, the Court noted that if the ALJ's decision was "consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant." *Id.*  Finally, *Wilson* considered the possibility of a scenario "where the Commissioner has met the goal of § 1527(d)(2)–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation." *Id.*  Since *Wilson*, the Sixth Circuit has continued to conduct a harmless error analysis in cases in which the claimant asserts that the ALJ failed to comply with the good-reason requirement.  *See, e.g.*, *Nelson v. Comm'r of Soc. Sec.*, 195 F. A'ppx 462, 472 (6th Cir. 2006) (finding that even though the ALJ failed to meet the letter of the good-reason requirement the ALJ met the goal by indirectly attacking the consistency of the medical opinions); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 749 (6th Cir. 2007) (finding that the facts did not satisfy potential harmless error justifications).

Here, as discussed above, the Undersigned does not find the opinions of Drs. Papadopal and Smilo to be patently deficient.  Second, ALJ Wang's decision is not consistent with the opinions of Drs. Papadopal and Smilo because he did not incorporate the limitations they

15

assessed into Plaintiff's RFC. Finally, the Undersigned concludes that the third scenario identified in *Wilson* is inapplicable because it is unclear from the opinion how ALJ Wang arrived at his RFC assessment given that the state-agency opinions upon which he relied pre-dated Plaintiff's alleged onset date and did not even consider his subsequently diagnosed severe spinal impairments and diabetic neuropathy. An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted). Here, it is unclear what specific objective findings or non-medical evidence ALJ Wang relied upon to reject Plaintiff's testimony and the opinions of Drs. Papadopal and Smilo that due to his diabetic neuropathy, Plaintiff cannot sustain prolonged sitting, standing, or walking because his lower extremities will become numb. ALJ Wang's lack of articulation prevents this Court from conducting meaningful review to determine whether substantial evidence supports his decision. *See Rogers* 486 F.3d at 248 (quoting *Hurst*, 753 F.2d at 519) ("It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review."); *Reynolds v. Comm'r of Soc. Sec.*, No. 09–2060, 2011 WL 1228165, at *4 (6th Cir. Apr. 1, 2011) (quoting 5 U.S.C. § 557(c)(3)(A)) (noting that an ALJ's decision "must include a discussion of 'findings and conclusions, and the reasons or basis

16

therefor, on all the material issues of fact, law, or discretion presented on the record.'"). The Undersigned therefore declines to find ALJ Wang's erroneous consideration of the opinions of Plaintiff's treating physicians to be harmless.

It is therefore **RECOMMENDED** that the Court find Plaintiff's first contention of error to be well taken.

## IV. DISPOSITION

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). Accordingly, the Undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## V. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, he may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate

judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


Date: February 13, 2017                             /s/ *Elizabeth A. Preston Deavers*
                                                                ELIZABETH A. PRESTON DEAVERS
                                                                UNITED STATES MAGISTRATE JUDGE